Honorable John C. Coughenour

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CASSAN ENTERPRISES, INC., *et al.*,<br><br>    Plaintiffs,<br><br>    v.<br><br>AVIS BUDGET GROUP, INC., *et al.*,<br><br>    Defendants. | C10-1934-JCC<br><br>**ORDER** |

This matter comes before the Court upon the separate motions to dismiss of Defendant Dollar Thrifty Automotive Group (Dkt. No. 15) and Defendant Avis Budget Group. (Dkt. No. 25). In addition to Defendants' motion, the Court has considered Plaintiffs' respective responses (Dkt. Nos. 26 & 33), along with Defendants' respective replies. (Dkt. Nos. 32 & 34). The Court has also considered the parties' various supporting exhibits and declarations. Having therefore thoroughly reviewed the record, the Court has determined that oral argument is unnecessary. For the reasons discussed below, the Court hereby GRANTS the motion, and therefore DISMISSES this matter without prejudice.

## I.  BACKGROUND

This case deals with alleged violations of the Clayton Anti-Trust Act. In October 2010, Defendant Avis Budget Group announced its intention to acquire Defendant Dollar Thrifty Automotive Group. The proposed acquisition would reduce the number of significant participants in the airport car-rental market from four to three: Defendant Avis Budget today controls approximately twenty-nine percent of the airport car-rental industry, while Defendant Dollar Thrifty today controls approximately twelve percent of the same industry. (Complaint 2 (Dkt. No. 1)). Two other firms control virtually all of the remaining fifty-nine percent of the airport car-rental industry: Enterprise Holdings controls approximately thirty-one percent, and Hertz Holdings controls approximately twenty-six percent. The remaining two percent of the industry is controlled by relatively small firms. (*Id.*).

Plaintiff James Cassan owns several corporations that compete with Defendants. One such company is a franchisee of Defendant Dollar Thrifty. It is located at the Portland Airport and does business under the name of Dollar-Rent-A-Car. Another such company has a similar arrangement at the Seattle Airport. (*Id.* 5–6). Plaintiff also alleges that he occasionally rents automobiles for personal and business purposes. (*Id.* 6). The gravamen of Plaintiff's complaint is that the planned acquisition will likely cause him to suffer injury attributable to Defendants' anti-competitive behavior: "These post-merger concentration levels will increase the likelihood that the resultant oligopoly will coordinate its market pricing, either expressly or tacitly, resulting in higher prices, lower product and service quality, and overall diminished consumer welfare." (*Id.* 22).

### A.  Acquisition Plans

On October 5, 2010, Defendants Avis Budget and Dollar Thrifty issued a joint public statement announcing that they intended to seek regulatory approval for the proposed acquisition: "Dollar Thrifty and Avis Budget have agreed to cooperate with respect to Avis Budget's efforts to pursue antitrust clearance of the proposed acquisition by Avis Budget of Dollar Thrifty." (Press Release 1 (Dkt. No. 25-

1 at 2)). The announcement expressly contemplated the possibility that regulators would withhold their approval: "There can be no assurance on the timing or outcome of the efforts to secure antitrust clearance for the proposed transaction, that any agreement with respect to the transaction will be reached, or as to the timing or terms thereof." (*Id.*). Since then, executives at each company have announced that the firms continue to cooperate in their efforts to secure regulatory approval for the proposed acquisition. (Complaint 7–8 (Dkt. No. 1)).

**B.     The Federal Trade Commission & the Regulatory Approval Process**

The Clayton Anti-Trust Act broadly forbids any person from acquiring stock in any corporation or other company when "the effect of such acquisition may be substantially to lessen competition, or to tend to create a monopoly." 15 U.S.C. § 18. A pre-reporting requirement exists for certain categories of large mergers that are particularly likely to result in an illegal concentration of market share. *Id.* § 18a. Under this provision, a person acquiring a particularly large share of a company must file advance notice with the Federal Trade Commission and the Antitrust Division of the Department of Justice. *Id.* § 18a(b). In part, this requirement of advance notice is designed to give the Commission an opportunity to evaluate whether the effect of the proposed acquisition is unlawful. *See id.* §§ 18a(d); 18a(f).

The Commission generally has thirty days during which to decide whether to approve a proposed acquisition. *Id.* § 18a(b). The Commission may nonetheless extend the thirty-day window if such an extension is necessary in order to receive "additional information or documentary material relevant to the proposed acquisition[.]" *Id.* § 18a(e). While the Commission is considering whether to approve a proposed acquisition, the parties are forbidden from consummating their private deal. *Id.* § 18a(a). If the Commission determines that a proposed acquisition is potentially unlawful, it has the authority to file a civil action in a United States district court. *Id.* §18a(f). The Commission lacks the authority, however, to extinguish any cause of action belonging to a private litigant. *Id.* 18a(i)(1).

//

## II.   RELEVANT LAW

United States courts are courts of limited jurisdiction, and the judicial power of the United States extends only to those "Cases" and "Controversies" that arise under the Constitution and the laws and treaties of the United States. U.S. CONST. Art. III. An "essential and unchanging part of [this] case-or-controversy requirement" is the requirement that the party invoking the jurisdiction of this Court enjoy "constitutional standing." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

Supreme Court precedent has established that constitutional standing is comprised of an "*irreducible constitutional minimum*" of three elements. *Lujan*, 504 U.S. at 560 (emphasis added). "First, the plaintiff must have suffered an 'injury in fact,'—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.* at 560–61 (internal citations and markings omitted).

A plaintiff fails to establish constitutional standing if he alleges nothing more than a possible *future* injury. *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990). As the Supreme Court has explained: "[U]nadorned speculation will not suffice to invoke the federal judicial power." *Simon v. Eastern Kentucky Welfare Rights Organization*, 426 U.S. 26, 44 (1976). An exception to this rule exists for those injuries which are *certain* to follow from a defendant's conduct: "One does not have to await the consummation of threatened injury to obtain preventive relief. *If the injury is certainly impending*, that is enough." *Babbit v. United Farm Workers National Union*, 442 U.S. 289, 298 (1979) (emphasis added); *see also City of Los Angeles v. Lyons*, 461 U.S. 95, 101–02 (1983) ("The plaintiff must show that he has sustained or is immediately in danger of sustaining some direct injury . . . , and the injury or threat of injury must be both 'real and immediate,' and not 'conjectural' or 'hypothetical.'").

The party invoking this Court's jurisdiction bears the burden of establishing that he or she satisfies the requirements for constitutional standing. *Lujan*, 504 U.S. at 561. A plaintiff's complaint, therefore, must contain "general *factual* allegations of injury resulting from the defendant's conduct[.]" *Id.* If a plaintiff's complaint fails to plead sufficient facts demonstrating that the defendant's conduct has caused him to suffer a legally cognizable injury, this Court's duty is clear. The Federal Rules of Civil Procedure unambiguously declare: "If the Court determines at any time that it lacks subject-matter jurisdiction, *the Court must dismiss the action.*" FED. R. CIV. P. 12(h)(3) (emphasis added).

## III.   DISCUSSION

Because Plaintiffs have failed to plead any facts tending to indicate the they have suffered any injury from the proposed acquisition, and because the possible future injuries which they describe in their complaint are far from certain, this case must be dismissed. It is self-evident that Plaintiffs have not suffered any injury from the proposed acquisition: *It has not yet taken place.*

Because "[a]llegations of future injury do not satisfy the requirements of Article III," *Whitmore*, 495 U.S. at 158, Plaintiff's complaint can therefore survive only if Plaintiff has pled factual allegations of an injury that is "certainly impending." *Id.* (quoting *Babbit*, 442 U.S. at 298). Plaintiff cannot clear that hurdle: Defendants properly note that the Federal Trade Commission is still reviewing the proposed acquisition, and that aspects of the acquisition may change as a result of the Commission's review.[1] (Motion 6–8 (Dkt. No. 25)). The proposed acquisition therefore still lacks shape, which means that the extent and nature of Plaintiffs' injuries are entirely speculative. After all, the acquisition that emerges

---

[1] Plaintiffs argue that this Court cannot consider the Commission's review process because the Commission cannot insulate a proposed merger from judicial review *via* agency approval. (Response 8–11 (Dkt. No. 33)). While it is true that the Commission lacks the authority to unilaterally extinguish the rights of any private litigant to bring a lawsuit in his or her own name, it is equally true that the Commission enjoys the authority to invoke the jurisdiction of United States courts to enjoin proposed corporate mergers. Corporations therefore collaborate with the Commission to fashion mergers in such a way that the mergers are unlikely to "lessen competition, or to tend to create a monopoly." *See* 15 U.S.C. § 18. Because the collaboration between Defendants and the Commission is likely to change aspects of the proposed merger, this Court properly considers the review process as part of the standing inquiry. As Judge Easterbrook of the Seventh Circuit has explained: "Until the agencies have had their say, it is impossible to perform the sort of antitrust analysis that is integral to a potential competition case, and it therefore would be a waste of everyone's time to proceed." *South Austin Coalition Community Council, et al. v. SBC Communications, Inc.*, 191 F.3d 842, 845 (7th Cir. 1999).

1  from the Commission's review process might very well address any and all of the injuries of which
2  Plaintiffs complain. Because Plaintiff's complaint relies upon speculation about the content of the
3  proposed merger, and because "unadorned speculation will not suffice to invoke the federal judicial
4  power," *see Simon,* 426 U.S. at 44, this Court lacks subject-matter jurisdiction over this case. The Court
5  must therefore dismiss this matter without prejudice. *See* FED. R. CIV. P. 12(h)(3).

## IV. CONCLUSION

For the aforementioned reasons, the Court hereby GRANTS Defendants' motions to dismiss. (Dkt. Nos. 15 & 25). The Court therefore DISMISSES this case without prejudice.

SO ORDERED this 11th day of March, 2011.

_____
JOHN C. COUGHENOUR
United States District Judge